200 N.J. Super. 639 (1985)
491 A.2d 1347
DIRECTIONS, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
NEW PRINCE CONCRETE CONSTRUCTION COMPANY, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 1, 1985.
Decided May 3, 1985.
*640 Before Judges McELROY and DREIER.
Michael Gross argued the cause for appellant (Michael Gross on the brief).
*641 Loraine Schewior argued the cause for respondent (Sterns, Herbert & Weinroth, attorneys; Mark D. Schorr, of counsel; Loraine Schewior, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant has appealed from separate summary judgments granted to plaintiff on the issues of liability and damages. This case raises a question of novel impression concerning the defense of impossibility of performance or frustration of purpose to an otherwise viable breach of contract claim.
The facts are relatively simple. Defendant was awarded a contract to improve an intersection in the City of Linden, Union County. The contract required defendant to provide traffic directors to maintain a safe flow of traffic around the construction site. By agreement dated May 2, 1983, accepted by plaintiff on May 20, 1983, defendant subcontracted for plaintiff's services to provide 780 man-hours of traffic directors at a unit price of $9.90 per hour, or a total contract price of $7,722.00.
Two weeks later, on June 3, 1983, the Resident Engineer of the New Jersey Department of Transportation in charge of the project issued a memorandum that "civilian flagmen will not be allowed to direct traffic in Union County." The memorandum referred specifically to the work to be performed by defendant and the fact that plaintiff had been listed by defendant as the subcontractor for traffic direction. The memorandum further called for the immediate elimination of plaintiff from the job so that the "police can safely direct traffic at the work site." Attached to the memorandum was an internal memorandum of the Union County Prosecutor's Office from an Assistant Prosecutor to the Prosecutor concluding that "civilians may not be authorized to direct traffic."
The memorandum of the Resident Engineer, with the attached Prosecutor's memorandum, were served upon defendant by a uniformed police officer of the City of Linden, who *642 informed defendant that plaintiff's personnel would not be permitted to direct traffic at the work site. Defendant immediately notified plaintiff of this directive and, although plaintiff sent traffic directors on the first day of the job, they were denied permission to perform their services[1]. Defendant, in order to satisfy its contract to provide traffic direction, retained the services of off-duty policemen for which it paid a greater price than that for which it had originally contracted with plaintiff.
Plaintiff through interrogatories determined that police traffic directors actually worked 2,577 man-hours on the job. Had plaintiff been permitted to perform, the gross payment to it for the extended contract would have been $25,512.30. After subtracting the direct labor costs, travel allowances and social security and employment contributions, the total profit to plaintiff was computed to be $14,142.58 for which judgment was entered, over defendant's objections that there had been no allocation for indirect administrative expenses.
Although the parties have argued whether the prosecutor's memorandum and engineer's directive were legally correct, that is not the issue before us. Had the directive been outlandish and had time been available for an administrative or judicial review, there may have been some reason to delve into this issue. We must, however, view this matter through the eyes of the parties, given the contemporaneous monetary and time constraints facing them. The contract was made between plaintiff and defendant on May 20, 1983, and plaintiff was called on Friday, June 3, 1983 to commence work Monday, June 6, 1983. Sometime over that weekend defendant was served with the memoranda and direction by the Resident Engineer in charge of the project. Although administrative or judicial *643 remedies may then have been resorted to, they were equally available to both sides.
By way of hindsight, it would be easy for us to say that defendant should have challenged the engineer's directive, obtained a temporary judicial stay or administrative review, refused to hire the off-duty policemen and run the attendant risks of being in breach of its own construction contract and being disqualified from future public contracts. Defendant complied with what apparently was a valid order of the authorized representative of the Department of Transportation, buttressed by the authority of the Union County Prosecutor's Office and subject to apparent immediate implementation by the local police. It was error for a court to have held that such conduct did not even raise a factual issue under R. 4:46-2 and thus was subject to summary judgment on liability against defendant.
In a different setting our Supreme Court has noted that where a party to a contract "is unavoidably through no fault of his own prevented from consummating" a contract, the obligation of such party to fulfill the contract is excused; it must be considered beyond the contemplation of the other party to the contract that he will be paid in such circumstances. Rothman Realty Corp. v. Bereck, 73 N.J. 590, 601 (1977). See also 18 J. Williston, Contracts (3 ed. Jaeger 1978), § 1939 at 46-56, in which the author discusses performance prevented by judicial, executive or similar orders:
No doubt if the legal proceedings interfering with performance of the promise are in any way due to the fault of the promisor, ... the interference should constitute no defense, not because it is not the act of the law, but because the impossibility is primarily due to the promisor's own fault, not to fortuitous circumstances beyond his control.
Where, however, the proceedings which interfere with the performance of the promise are based on no fault of the promisor, there seems no reason why the interference should not be an excuse, unless the circumstances surrounding the formation of the contract are such as to indicate that the possibility of such interference was recognized and the risk of it assumed by the obligor. (at 48-49, footnotes omitted).
*644 The Restatement, Contracts 2d, §§ 261 and 264 state a similar rule:
§ 261. Discharge by Supervening Impracticability
Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.
§ 264. Prevention by Governmental Regulation or Order
If the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made.
As noted in comment b to § 264:
Under the rule stated in this Section, the regulation or order may be domestic or foreign. It may emanate from any level of government and may be, for example, a municipal ordinance or an order of an administrative agency. Any governmental action is included and technical distinctions between `law,' `regulation,' `order' and the like are disregarded. It is not necessary that the regulation or order be valid, but a party who seeks to justify his non-performance under this Section must have observed the duty of good faith and fair dealing imposed by § 205 in attempting, where appropriate, to avoid its application.
The comment further alludes to the similarity between this rule and the impossibility or frustration section of the sales article of the Uniform Commercial Code. See N.J.S.A. 12A:2-615 and comments thereto.
It is clear to us that the liability summary judgment entered was inappropriate. We note that no cross motion for summary judgment had been made by defendant and, therefore, we do not pass upon whether such motion, if made, should be granted.
With regard to the summary judgment later granted on the issue of damages, it appears that the trial judge assumed that plaintiff would have been retained on this job beyond the 780 hours contracted for by the parties' agreement of May 20, 1983. Had payments to plaintiff been required notwithstanding defendant's unwilling non-performance, as discussed above, it is inconceivable to us that defendant would have extended plaintiff's contract to cover the remaining man-hours required, paying *645 both the off-duty policemen actually directing the traffic and plaintiff's lost profit. The trial judge, however, without opinion, granted judgment multiplying plaintiff's profit by the total number of hours that the off-duty policemen worked on the job, 1,797 hours more than originally contracted for. The profit on the initial 780 hours, using plaintiff's cost figures, would have been only $4,280.64.
Defendant's objections that administrative and other fixed costs of plaintiff should have been factored into the loss equation were unsupported by any factual certification before the trial judge. Upon the conclusory certifications before him, the judge correctly declined to adjust for such fixed costs on this contract.
We have commented on this damage question, not because we require the trial court to reach this issue, but so that some guidance might be given in the event that, based upon any supplemental certifications presented to the court, summary judgment for either party is deemed inappropriate and the question is reached on remand. We note further that the issue of the increased hours included in the damage summary judgment was inexplicably not raised by defendant in its answering certification. The court, however, may also wish to address this issue on remand, if the damage question is reached. We lastly note that the certifications submitted to the trial judge were those of defendant's general counsel who also represented defendant in the proceeding. We assume that counsel had personal familiarity with the facts and, therefore, could certify to the same and that the matters set forth in his certifications were substantially uncontested. See RPC 3.7(a)(1).
The summary judgments for liability and damages are reversed, and this matter is remanded to the Law Division for further proceedings in accordance with this opinion. We do not retain jurisdiction.
NOTES
[1] Even if defendant is absolved of responsibility for the balance of the contract, there may be nominal liability for plaintiff's charges for the men that appeared for work on June 6, 1983, if notice to plaintiff came too late to call off their appearance.